UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE TOX FRANCHISING GROUP, LLC, and THE TOX IP, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No: 3:26-cv-00141 |
| TENNESSEE BODY SCULPTING CO., RACHEL BORYACHINSKIY, GERMAN BORYACHINSKIY, and JOHN DOES 1-2, | ) ) ) ) ) | Judge Crenshaw<br><br>Magistrate Judge Holmes |
| Defendants. | ) | |

| | | |
|---|---|---|
| TENNESSEE BODY SCULPTING CO., RACHEL BORYACHINSKIY, GERMAN BORYACHINSKIY, | ) ) ) | |
| Counter-Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| THE TOX FRANCHISING GROUP, LLC and THE TOX IP, LLC, | ) ) ) | |
| Counter-Defendants. | ) | |

**COUNTER-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTER-PLAINTIFFS' COUNTERCLAIM**

COME NOW Plaintiffs/Counter-Defendants, **THE TOX FRANCHISING GROUP, LLC** and **THE TOX IP, LLC**, by and through undersigned counsel, who in support of their Motion to Dismiss the Defendants'/Counter-Plaintiffs' Counterclaim with prejudice state:

1

Defendants' Counterclaim does not state viable claims for relief; it is a collection of conclusory allegations, generalized grievances, and hindsight criticisms of a failed franchise relationship, untethered to the governing law or the parties' written agreement. Rather than pleading specific, actionable misconduct, Defendants attempt to recast ordinary commercial disappointment as fraud and breach of contract. The Federal Rules do not permit that approach.

As an initial matter, the Counterclaim fails to satisfy Rule 8. It does not plead discrete claims supported by particularized facts but instead offers a narrative that lumps together multiple parties, incorporates sweeping allegations across counts, and leaves both Plaintiffs and the Court to guess which facts support which claims. Courts in this Circuit routinely reject such pleadings.

The Counterclaim's fraud-based claims fail for an independent and more fundamental reason: they do not come close to satisfying Rule 9(b). Defendants do not identify who made any alleged misrepresentation, when it was made, where it occurred, or what specifically was said. Nor do they explain why any statement was false when made. These omissions are not technical defects – they are fatal.

Even if those deficiencies could be overlooked, the Counterclaim fails as a matter of substantive law. The alleged misrepresentations consist of forward-looking projections, generalized statements of business optimism, and other non-specific representations that are not actionable under Tennessee law. A party cannot transform non-actionable statements or unmet expectations into fraud simply because the business did not perform as hoped.

Defendants' contract claim fares no better. The Counterclaim does not identify a single provision of the Franchise Agreement that Plaintiffs allegedly breached. Instead, it attempts to impose obligations that do not exist in the Agreement – such as guaranteeing business success or

delivering particular outcomes. Tennessee law is clear that unfulfilled expectations do not constitute a breach of contract absent an express promise. Defendants plead none.

Finally, the Counterclaim ignores the very documents that define the parties' relationship. Those documents, which are part of the record in this matter, are properly considered at this stage and directly contradict the conclusory allegations on which Defendants rely. Where a written agreement conflicts with a party's allegations, the agreement controls.

In short, the Counterclaim is long on rhetoric but devoid of the factual and legal substance required to proceed. It should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiffs, The Tox Franchising Group, LLC and The Tox IP, LLC, are franchisors of a branded aesthetic and wellness business operating under The Tox system. On September 16, 2024, Defendants entered into a Franchise Agreement (the "Franchise Agreement") and a Multi-Unit Development Agreement ("MUDA," together with the Franchise Agreement, the "Agreements") with Plaintiffs governing the development and operation of franchised locations. *See* Verified Complaint (Dkt. 1), ¶¶ 17-18. Those agreements define the parties' rights and obligations, including provisions governing performance, default, and termination. *See id.*, ¶¶ 20-22, 25, 23-24, 35, 38, 43.

Plaintiffs commenced this action after Defendants failed to comply with their contractual obligations and engaged in conduct inconsistent with the agreements. *See id.*, ¶¶ 21-27, 23-45. Plaintiffs' Verified Complaint alleges, among other things, that Defendants defaulted under the governing agreements and that Plaintiffs exercised their contractual rights in response. *See id.*

In response, Defendants asserted a Counterclaim alleging breach of contract, fraud-based claims, statutory violations, and related theories. The Counterclaim relies on generalized

3

allegations regarding Plaintiffs' alleged representations about business performance and conclusory assertions that Plaintiffs acted improperly in connection with the parties' agreements.

The Counterclaim does not identify specific contractual provisions allegedly breached, does not plead fraud-based claims with particularity, and does not allege facts sufficient to support the various statutory and quasi-contractual claims asserted therein.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Conclusory allegations and legal labels do not suffice. A court need not accept as true legal conclusions couched as factual allegations, and claims resting on speculation or formulaic recitations of elements must be dismissed. *See, e.g.*, *Alsbrook v. Concorde Career Colleges, Inc.*, 469 F. Supp. 3d 805, 822 (W.D. Tenn. 2020).

Dismissal as per Rule 12(b)(6) is proper if a claim does not allege the proper elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff is obligated to provide the grounds of his entitlement to relief, and "that obligation requires more than labels and conclusion or a formulaic recitation of the elements of a cause of action." *Id*. ("Factual allegations must be enough to raise a right of relief beyond a speculative level."). To survive dismissal, a claim must be plausible. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Rule 8 requires a pleading to set forth a short and plain statement showing entitlement to relief, with allegations sufficient to give each defendant fair notice of the claims against it. Pleadings that rely on vague, conclusory assertions or that improperly lump multiple defendants

4

together without differentiating their alleged conduct fail to satisfy Rule 8 and are subject to dismissal. *See Beach v. Wal-Mart Stores, E., LP*, 2021 WL 602910, at *2 (M.D. Tenn. Feb. 16, 2021).

Where a claim sounds in fraud, Rule 9(b) imposes a heightened pleading standard. A party must plead with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the alleged misrepresentation. Failure to identify the speaker, the content of the alleged statements, when and where they were made, and why they were fraudulent requires dismissal. *See Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614-15 (6th Cir. 2024); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003); *Caboodles Cosmetics, Ltd. P'ship v. Caboodles, LLC*, 412 F. Supp. 2d 872, 878 (M.D. Tenn. 2006).

In evaluating a motion to dismiss, the Court may consider not only the allegations of the pleading but also documents attached to or referenced in it and central to the claims. Where such documents contradict the pleading's allegations, the documents control. *See Russell Barnett Ford of Tullahoma, Inc. v. H & S Bakery, Inc.*, 398 F. Supp. 3d 287, 294 (E.D. Tenn. 2019); *Patel v. AR Group Tennessee, LLC*, 2022 WL 2678733, at *5 (M.D. Tenn. July 11, 2022).

Finally, under Tennessee law[1], claims for fraud and negligent misrepresentation must be grounded in specific, actionable misstatements of material present or past fact, and must plausibly allege reasonable reliance. Statements of opinion, generalized business optimism, or forward-looking projections are not actionable as a matter of law. *See Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006); *Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V.*, 685 F. Supp. 3d 654, 671 (E.D. Tenn. 2023); *Alsbrook*, 469 F. Supp. 3d at 832 fn. 4; *Dawit v. Meharry Med. Coll.*, 721 F. Supp. 3d 647, 672 (M.D. Tenn. 2024).

---

[1] The Franchise Agreement is governed by Florida Law. *See* Dkt. 1-1 at Section 20.3. However, the Defendants' Counterclaims appear to be asserted under Tennessee law.

<u>**ARGUMENT**</u>

**I.      The Counterclaim Fails to Satisfy Rule 8**

Defendants' Counterclaim fails at the threshold because it does not satisfy Rule 8. Rather than pleading discrete claims supported by specific factual allegations, Defendants present a narrative that blends together conclusory assertions, generalized grievances, and sweeping accusations without tying them to particular causes of action or particular Defendants.

Rule 8 requires more. A pleading must provide sufficient factual content to give each defendant fair notice of the claims asserted and the grounds upon which those claims rest. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A counterclaim that relies on vague, conclusory allegations or that improperly lumps multiple defendants together without differentiating their alleged conduct does not meet that standard and is subject to dismissal. *See Beach*, 2021 WL 602910, at *2.

That is precisely what Defendants have done here. The Counterclaim repeatedly refers to "Plaintiffs" collectively, without identifying which Plaintiff allegedly engaged in which conduct, and without alleging facts showing how either entity is individually liable. It likewise incorporates broad factual narratives across multiple counts, leaving both Plaintiffs and the Court to guess which allegations support which claims. This type of undifferentiated, conclusory pleading is insufficient as a matter of law.

Nor do Defendants provide the factual detail necessary to render their claims plausible. Instead, the Counterclaim relies on general assertions that Plaintiffs "failed" in various respects or "misrepresented" aspects of the franchise relationship, without supplying the factual content required to support those conclusions. Without more, Plaintiffs have no plausible method or ability to adequately defendant themselves.

6

For this reason alone, the Counterclaim should be dismissed.

**II.     The Fraud-Based Claims Fail to Satisfy Rule 9(b)**

Even if the Counterclaim satisfied Rule 8 (which it does not), Defendants' fraud-based claims independently fail because they do not meet the heightened pleading standard of Rule 9(b).

Rule 9(b) requires a party alleging fraud to plead with particularity the circumstances constituting the alleged misconduct, including the "who, what, when, where, and how" of the purported misrepresentation. *Greer*, 114 F.4th at 614-15; *Yuhasz*, 341 F.3d at 563. This standard is not a formality – it exists to ensure that defendants are provided with sufficient notice of the specific misconduct alleged and to prevent precisely the type of generalized accusations presented here.

The Counterclaim falls far short of that requirement. Defendants do not identify who made any specific misrepresentation, when any such statement was made, or where it occurred. Nor do they allege the precise content of any purported statement with the specificity required to assess its accuracy. Instead, the Counterclaim relies on vague assertions that Plaintiffs made unspecified "representations" or "promise[s]," without supplying the factual detail necessary to support those conclusions.

Equally fatal, Defendants fail to plead why any alleged statement was false when made. Rule 9(b) requires more than hindsight allegations that a business venture did not perform as expected; a plaintiff must allege facts showing that a statement was false or misleading at the time it was made. *See Alsbrook*, 469 F. Supp. 3d at 845-46; *Dawit*, 721 F. Supp. 3d at 673. Defendants do not do so here.

The Counterclaim also improperly lumps Plaintiffs together, attributing unspecified conduct to "Plaintiffs" collectively without identifying which entity made which statement or

7

engaged in which conduct. Such group pleading is insufficient. *See Beach*, 2021 WL 602910, at *2.

Courts in this Circuit routinely dismiss fraud claims that suffer from these exact deficiencies. *See, e.g.*, *Yuhasz*, 341 F.3d at 563. Because Defendants have not pleaded the circumstances of any alleged fraud with the particularity required by Rule 9(b), their fraud-based claims must be dismissed.

### III. The Fraud and Misrepresentation Claims Fail as a Matter of Law

Even if Defendants could overcome the pleading deficiencies described above (they cannot), their fraud-based claims fail for an independent reason: the allegations describe non-actionable statements as a matter of Tennessee law.

To state a claim for fraud or negligent misrepresentation, a plaintiff must allege a misrepresentation of a material present or past fact. Statements of opinion, generalized business optimism, or forward-looking projections are not actionable. *See Power & Tel.*, 447 F.3d at 931; *Monaco*, 685 F. Supp. 3d at 671; *Alsbrook*, 469 F. Supp. 3d at 832 n.4; *Dawit*, 721 F. Supp. 3d at 672.

That distinction is dispositive here. The Counterclaim does not identify any concrete misstatement of existing fact. Instead, it largely relies on allegations that Plaintiffs made representations regarding expected business performance and the anticipated success of the franchise. Courts applying Tennessee law routinely reject claims premised on such allegations. Statements regarding anticipated profitability, business success, or future performance do not constitute actionable misrepresentations, even where those expectations are not ultimately realized. *See Power & Tel.*, 447 F.3d at 931; *Dawit*, 721 F. Supp. 3d at 672. A plaintiff cannot

8

convert ordinary commercial risk into fraud liability simply because the business did not perform as hoped.

Moreover, Defendants' allegations also fail because they do not plausibly establish reasonable reliance. Tennessee law requires a plaintiff to demonstrate that any reliance on an alleged misrepresentation was justified under the circumstances. *See Riddle v. Lowe's Home Centers, Inc.*, 802 F. Supp. 2d 900, 907-08 (M.D. Tenn. 2011). Here, the Counterclaim alleges reliance on vague, forward-looking statements regarding business performance – precisely the type of statements that courts deem non-actionable and inherently unreliable as a matter of law.

Finally, Defendants' allegations are further undermined by the governing franchise documents, which are referenced in and central to the Counterclaim. Those documents define the parties' relationship and do not contain the types of concrete, present-tense representations that Defendants now attempt to attribute to Plaintiffs. Where, as here, the governing documents contradict or fail to support a party's allegations, the Court need not accept those allegations as true at the pleading stage. See *Russell Barnett Ford*, 398 F. Supp. 3d at 294; *Patel*, 2022 WL 2678733, at \*5. The Franchise Agreement, agreed to and signed by Defendants, contains a merger and integration clause, which states as follows:

> 21.4 <u>Entire Agreement</u>. This agreement, including all attachments, is the entire agreement of the parties, superseding all prior written or oral agreements of the parties concerning the same subject matter, and superseding all prior written or oral representations made to Franchisee, except that nothing in this Agreement or in any related agreement is intended to disclaim the representations made to Franchisee in Franchisor's Franchise Disclosure Document. No agreement of any kind relating to the matters covered by this Agreement and no amended of the provisions hereof shall be binding upon either party unless and until the same has been made in writing and executed by all interested parties.

(Franchise Agreement Section 21.4). Precedent establishes that such a clause can preclude claims of fraud or misrepresentation.

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29, n. 28 (Mich. 1994). "If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties ... this declaration is conclusive as long as it has itself not been set aside by a court on grounds of fraud or mistake ... It is just like a general release of all antecedent claims." 3 Corbin, Contracts, § 578, pp. 402-411; *UAW-GM Hum, Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 416 (Mich. Ct. App. 1998) ("When the parties choose to include an integration clause, they clearly indicate that the written agreement is integrated."). A merger or integration clause can thus preclude a fraud claim or defense in two ways. *See Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-cv-679, 2009 WL 3270265, *3 (W.D. Mich. Oct. 5, 2009). First, a merger clause establishes that a written contract is an integrated agreement, so it brings into play the parol evidence rule. *Id.* Second, "since a merger clause nullifies a promise not included in the written agreement, it also makes reliance on that promise unreasonable." *Id.*

*Vertical Yield, LLC v. CoherentRx, Inc.*, No. 3:19-CV-379, 2022 WL 2789224, *6 (E.D. Tenn. July 15, 2022).

In short, the merger and integration clause removes any reasonable reliance on representations not included in the Franchise Agreement. *See* Franchise Agreement, § 21.4. Thus, the fraud and negligent misrepresentation claims, even if properly pled, still fail as a matter of law and must be dismissed.

## IV.    The Breach of Contract Claims Fail as a Matter of Law

Defendants' breach of contract claim is deficient as plead because the Counterclaim does not identify any provision of the Franchise Agreement that Plaintiffs allegedly breached.

To state a claim for breach of contract under Tennessee law, a plaintiff must identify the specific contractual obligation at issue and allege facts showing how that obligation was breached. *See Archambeault v. Wyndham Vacation Ownership, Inc.*, 2021 WL 6496827, at *9 (M.D. Tenn. July 14, 2021). Generalized allegations that a party failed to meet expectations or deliver anticipated results are insufficient, as unfulfilled expectations do not constitute a breach of contract absent an express promise. *See Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 522 (Tenn. Ct. App. 2002).

10

The Counterclaim does not meet that standard. It does not cite any provision of the Franchise Agreement, nor does it allege facts showing how Plaintiffs failed to perform any specific contractual duty. *See* Counterclaim. ¶¶ 58-68. Instead, Defendants rely on vague assertions that Plaintiffs failed to provide adequate support, failed to ensure business success, or otherwise failed to meet Defendants' expectations regarding the franchise relationship. *Id.*

To the extent Defendants seek to impose obligations not grounded in express terms of the Franchise Agreement – such as generalized duties to ensure business success or meet subjective expectations – those allegations do not state a viable breach of contract claim under Tennessee law. *See Burton*, 129 S.W.3d at 521. A plaintiff cannot impose obligations that do not appear in the governing agreement or transform general dissatisfaction with business performance into a breach of contract claim.

Moreover, the Counterclaim appears to rely on theories that are inconsistent with the terms of the Franchise Agreement, which does not guarantee business success, profitability, or any particular outcome.[2] Where a party's allegations are inconsistent with the governing contract, those allegations cannot sustain a claim. See *Russell Barnett Ford*, 398 F. Supp. 3d at 294; *Patel*, 2022 WL 2678733, at *5.

Accordingly, the Counterclaim fails to identify a cognizable breach of a specific contractual provision and should be dismissed.

### V.     Defendants' Remaining Claims Fail as a Matter of Law

---

[2]     In fact, the Franchise Agreement does the exact opposite. *See* Franchise Agreement, § 11.1 ("Developer acknowledges that Developer has conducted an independent investigation of all aspects relating to the financial, operational and other aspects of the business of developing and operating Franchised Businesses. Developer further acknowledges that no representations of performance (financial or otherwise) for the Franchised Businesses provided for in this Agreement has been made to Developer by Franchisor and Developer hereby waives any claim against Franchisor for any business failure Developer may experience as a developer under this Agreement").

### A. The Implied Covenant Claim Fails Because It Is Not an Independent Cause of Action

Defendants' claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law. Under Tennessee law, the implied covenant is not a standalone cause of action and cannot be asserted independently of a breach of contract claim. *See Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 (6th Cir. 2003); *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 685 fn. 1 (Tenn. 1996). Moreover, the implied covenant "does not create new contractual rights or obligations" and cannot be used to alter or expand the parties' agreement. *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 666 (Tenn. 2013). Because Defendants have failed to state a viable breach of contract claim, their implied covenant claim necessarily fails as well.

In any event, the Counterclaim fails to plead facts sufficient to support such a claim. Defendants' two-paragraph claim alleges only that Plaintiffs acted in an "arbitrary and bad-faith manner" and deprived them of "reasonable commercial expectations," but does not identify any specific contractual provision, discretionary authority, or concrete benefit under the Franchise Agreement that was allegedly affected. *See* Counterclaim, ¶¶ 69-70. Such conclusory allegations are insufficient to state a claim. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nor may Defendants use the implied covenant to impose vague, extra-contractual duties untethered to the Franchise Agreement itself. Tennessee law is clear that the implied covenant cannot be invoked to create obligations that do not exist in the contract or to enforce generalized expectations of fairness. *See Dick Broad.*, 395 S.W.3d at 666.

Accordingly, Defendants' implied covenant claim fails as a matter of law and should be dismissed.

### B. The Declaratory Judgment Claim Is Duplicative and Should Be Dismissed

Where, as here, a declaratory judgment claim presents a "complete identity of factual and legal issues" with a party's breach of contract theory, dismissal is appropriate because the claim serves no independent purpose and would be rendered moot by resolution of the underlying claims. *See Nashville Supergroup, LLC v. Bridges*, 2025 WL 2813884, at \*5 (M.D. Tenn. Sept. 29, 2025); *Pearson Educ., Inc. v. C&N Logistics, Inc.*, 2018 WL 6528128, at \*5 (M.D. Tenn. Dec. 12, 2018); *Joe Hand Promotions, Inc. v. Simpson*, 521 F. Supp. 3d 701, 708–09 (M.D. Tenn. 2021).

Here, Defendants seek declarations that the MUDA was wrongfully terminated, that it remains valid and enforceable, that Plaintiffs committed the first material breach, and that termination was pretextual. Each of those requests presents the same factual and legal issues as Defendants' breach of contract claim – namely, whether Plaintiffs breached the Agreements and whether termination was proper. Because those issues will necessarily be resolved through adjudication of that claim, the declaratory judgment count is duplicative and must be dismissed.

### C. The Wrongful Termination Claim Is Not Cognizable and Is Entirely Duplicative

Defendants' "wrongful termination" claim fails as a matter of law because Tennessee does not recognize a standalone cause of action for wrongful termination of a commercial contract. Claims challenging the termination of a contract must be analyzed under traditional breach of contract principles, not as an independent tort or separate claim. *See Arch Wood Prot., Inc. v. Flamedxx, LLC*, 932 F. Supp. 2d 858, 865 (E.D. Tenn. 2013) (holding that a tortious breach of contract "is not a cognizable cause of action under Tennessee law"); *Brown v. Bd. of Educ. of Shelby Cnty. Schs.*, 47 F. Supp. 3d 665, 687 (W.D. Tenn. 2014) (explaining that good faith or lack thereof does not create an independent tort apart from breach of contract).

Consistent with this principle, courts applying Tennessee law routinely dismiss wrongful termination claims where they merely restate a breach of contract theory or seek identical relief.

13

*See Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847, 859 (6th Cir. 2021) (dismissing duplicative claims seeking the same relief as breach of contract); *Gibson Guitar Corp. v. Elderly Instruments, Inc.*, 2006 WL 1638404, at *5 (M.D. Tenn. June 8, 2006) (rejecting wrongful termination claim where termination complied with contract provisions).

Here, Defendants' cursory, two-paragraph wrongful termination allegations are entirely derivative of their contract claim and are based on the same assertion that Plaintiffs improperly terminated the Agreements. Because Defendants have failed to state a viable breach of contract claim, they cannot repackage that theory under a different label. The wrongful termination claim must be dismissed.

### D. The Unjust Enrichment Claim Is Barred by the Existence of Express Contracts

Defendants' unjust enrichment claim likewise fails because it is undisputed that the parties' relationship is governed by express written agreements, including the Franchise Agreement and MUDA.

Under Tennessee law, unjust enrichment is a quasi-contractual remedy that is not available where an express contract governs the same subject matter. *See Fletcher Realty, Inc. v. Hayslope Props., Inc.*, 712 S.W.2d 478, 481 (Tenn. Ct. App. 1986) ("an implied contract or quasi-contract will not be imposed in circumstances where an express contract or agreement exists"); *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn. Ct. App. 1994) (same). The elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. *See Bennett v. Visa USA, Inc.*, 198 SW 3d 747, 755 (Tenn. Ct. App. 2016). The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust.

14

*Id.* Further, the plaintiff (here, Counter-Plaintiffs/Defendants) must demonstrate that it has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

Unjust enrichment claims, by their nature, are not based upon a contract. Here, Defendants' unjust enrichment claim is based on the same alleged conduct and transactions governed by the Franchise Agreement and MUDA – namely, the payment of fees, provision of services, and operation of the franchise relationship. The Counterclaim does not allege that those agreements are invalid, unenforceable, or otherwise inapplicable; to the contrary, Defendants' claims depend on those agreements. As evidenced by the Court's prior rulings and Orders in this matter, it has been established that the express written agreements were valid when signed and ruled in accordance with that determination. As such, no quasi-contract theory exists in the present case, and Defendants' allegations fail to meet the elements of an unjust enrichment claim.

Even if the Court found that no contract existed between the parties, Defendants' unjust enrichment claim is premature. To succeed on a claim for unjust enrichment, the plaintiff must demonstrate that it has exhausted all remedies against the person with whom the plaintiff has privity of contract. *Freeman Indust., LLC*, 172 S.W.3d at 525; *Whitehaven Comty. Baptist Church*, 973 S.W.2d at 596; *Paschall's Inc.,* 407 S.W.2d at 15*; Heathcott & Associates, LLC v. Russell*, 2024 WL 4573829, at \*3 (M.D. Tenn. Oct. 24, 2024). Defendants did not have the right to bring the claim for Unjust Enrichment **unless and until** showed that they have exhausted their remedies with the party with whom they had privity of contract. *See AmSouth Erectors, L.L.C. v. Skaggs Iron Works, Inc.*, No. W2002-01944-COA-R3-CV, 2003 Tenn. App. LEXIS 551 at \*21 (Tenn. Ct. App. Aug. 5, 2003). If the Franchise Agreement and MUDA were found to be invalid, unenforceable, or otherwise inapplicable, Defendants must exhaust all available remedies before

proceeding on an unjust enrichment claim against Plaintiffs. Defendants have not satisfied all remedies at this time. As such, their claim for unjust enrichment still fails and must be dismissed.

Because the subject matter of the unjust enrichment claim is fully governed by express contracts, Defendants cannot proceed under a quasi-contract theory as a matter of law, and the claim must be dismissed.

### E. The TCPA Claim Fails to Plead with Particularity

Defendants' claim under the Tennessee Consumer Protection Act ("TCPA") fails because it is premised on alleged misrepresentations and therefore must satisfy the heightened pleading requirements of Rule 9(b).

Federal courts in Tennessee consistently hold that TCPA claims sounding in fraud must be pleaded with particularity, including the time, place, and content of the alleged misrepresentation, the identity of the speaker, and the resulting injury. *See ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 833 (E.D. Tenn. 2024) ("Allegations of unfair or deceptive acts or practices under the TCPA must be led with specificity, as required by Federal Rule of Civil Procedure 9(b), because they are allegations of fraud"); *Hard Surfaces Sols., LLC v. Constr. Mgmt., Inc.*, 544 F. Supp. 3d 825, 831 (M.D. Tenn. 2021) (TCPA claim dismissed where, as here, "the alleged scheme is only defined in the vaguest of terms").

The Counterclaim falls far short of that standard. Defendants do not identify any specific deceptive act, statement, or omission attributable to any Plaintiff. Instead, they merely recite statutory subsections and assert in conclusory fashion that Plaintiffs' conduct was "willful, knowing, and intentional." *See* Counterclaim, ¶¶ 79-81. Such allegations (devoid of any factual detail) are insufficient as a matter of law.

Nor do Defendants allege the "who, what, when, where, and how" of any purported misrepresentation. As discussed above, the Counterclaim fails to identify who made any statement, when it was made, or why it was false when made. These deficiencies are fatal under Rule 9(b). *See Greer*, 114 F.4th at 614–15; *Yuhasz*, 341 F.3d at 563. Moreover, the TCPA claim is based on the same deficient allegations underlying Defendants' fraud and misrepresentation claims. Those allegations fail as a matter of law and cannot be repackaged as a statutory violation.

Accordingly, Defendants' TCPA claim must be dismissed.

### F. Defendants Have No Private Right of Action Under TCPA

Defendants claim that Plaintiffs violated the Tennessee Consumer Protection Act ("TCPA"), "specifically Tenn. Code Ann. § 47-18-104(a), (b), (7) and (12)," which can reasonably be interpreted to mean §§ 47-18-104(b)(7) and 47-18-104(b)(12) based upon the structure of the relevant statutory authority. Tenn. Code Ann. § 47-18-109(a)(1) sets forth the parameters for a private right of action under the TCPA:

> (a)(1) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1). "The TCPA, Tenn. Code Ann. § 47–18–101 *et seq.* (1995 & Supp.2000) (the TCPA), prohibits '[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce' *id.* § 47–18–104(a), and in particular, 'any ... act or practice which is deceptive to the consumer or to any other person.' § 47–18–104(b)(27). *Conner v. Hardee's Food Systems, Inc.*, 65 Fed. Appx. 19, 2003 WL 932432 (6th Cir. 2003). Defendants have not identified any specific "unfair or deceptive act or practice" described in § 47-18-104(b) which would entitle them to a bring an action individually against Plaintiffs under the TCPA.

Accordingly, even if Defendants' TCPA claim were pleaded with requisite specificity (which it is not), it would still fail and therefore must be dismissed.

### G. The Florida Statutory Claims Fail to Plead with Particularity

Defendants' claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and the Florida Franchise and Distributorships Act (FFDA) fail because they are premises on alleged misrepresentations and therefore must satisfy the heightened pleadings requirements of Rule 9(b). In a recent opinion, the Eleventh Circuit Court of Appeals, held that FDUTPA claims sounding in fraud must comply with Rule 9(b)'s particularity requirement:

> Rule 9(b)'s particularity requirements applies when a plaintiff "alleg[es] fraud." Fed. R. Civ. P. 9(b). "Whether a plaintiff 'alleg[es] fraud' under Rule 9(b) depends on the factual allegations underlying a plaintiff's claim—not how the plaintiff styles his claim. *See Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (finding that Rule 9(b) applied to the plaintiff's Arizona Consumer Fraud Act claim because the claim was "*based on allegations* that [the plaintiff] relied on [the defendant's] intentional misrepresentations to his own detriment" (emphasis added)); *Kahn v. Walmart Inc.*, 107 F.4th 585, 601 (7th Cir. 2024) (explaining that "[t]he applicable pleading standard does not turn on a formalistic invocation" of certain words, but "depends instead on the plaintiff's factual allegations"). For that reason, we have held that so long as a claim "sound[s] in fraud" based on the allegations underlying the claim, Rule 9(b)'s particularity requirement applies. *Wilding*, 941 F.3d at 1127. That the plaintiff does not call his claim "fraud" is not dispositive. *See id*."

*Alin Pop v. LuliFama.com, LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025). While a plaintiff need not prove the elements of fraud to sustain an action under FDUTPA, they must allege "the who, what, when[,] where, and how" of the fraudulent conduct. *Id*. (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).

The FFDA allows a franchisee to bring an action for intentional misrepresentation related to prospects or chances for success of a proposed or existing franchise, the known required total investment for a franchise, and/or efforts to sell or establish more franchises than is reasonable for the market area. *See* Fla. Stat. Ann. § 817.416. While a heightened pleading requirements is not

18

explicitly set forth in the FFDA, such claims "sound in fraud" and trigger Rule 9(b)'s particularity requirements.

The Counterclaim falls far short of that standard. Defendants do not identify any specific deceptive act, statement, or omission attributable to any Plaintiff. Instead, they merely recite statutory subsections and assert in conclusory fashion that Plaintiffs' conduct was "willful, knowing, and intentional." *See* Counterclaim, ¶¶ 82-84. Such allegations (devoid of any factual detail) are insufficient as a matter of law. Nor do Defendants allege the "who, what, when, where, and how" of any purported misrepresentation. As detailed above, the Counterclaim fails to identify who made any statement, when it was made, or why it was false when made. Moreover, the FDUTPA and FFDA claims are based on the same deficient allegations underlying the Defendants' fraud and misrepresentation claims. As such, those allegations fail as a matter of law and cannot be repackaged as a statutory violation.

### H.  The Florida Statutory Claims Fail as a Matter of Law

Defendants' claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and the Florida Franchise and Distributorships Act (FFDA) also fail as a matter of law because Florida law does not govern this dispute. While the Franchise Agreement contains a choice-of-law provision (Section 20.3), under Tennessee law, choice-of-law provisions are generally respected but not automatically enforced.

Under Tennessee choice-of-law principles, courts apply the law of the state with the most significant relationship to the dispute. *See Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 646 (6th Cir. 2013). Courts applying those principles routinely decline to apply out-of-state consumer protection statutes where the alleged conduct and injury are centered elsewhere. *See, e.g.*, *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (adopting the "most significant

relationship" test under the Restatement (Second) of Conflict of Laws); *Montgomery v. Wyeth*, 580 F.3d 455, 459–60 (6th Cir. 2009) (applying that test and declining to apply foreign state law where another state had the most significant relationship to the dispute).

Here, the Counterclaim arises from a Tennessee-centered franchise relationship, and the alleged conduct and injuries arise from that relationship. Defendants do not allege facts establishing any meaningful connection to Florida sufficient to support application of Florida statutory law.

In any event, those claims independently fail for the same reasons as Defendants' fraud-based claims. Defendants allege only that Plaintiffs misrepresented the "prospects and chances of success" of the franchise. *See* Counterclaim, ¶ 83. This is precisely the type of forward-looking, non-actionable statements that cannot support liability. *See Power & Tel.*, 447 F.3d at 931. Moreover, because these claims are based on alleged misrepresentations, they must satisfy Rule 9(b). *See Greer*, 114 F.4th at 614–15; *Yuhasz*, 341 F.3d at 563. Defendants' conclusory allegations do not identify the who, what, when, where, or how of any purported misrepresentation and therefore fail as a matter of law. Accordingly, Defendants' Florida statutory claims must be dismissed.

## I. Defendants' "Damages" Claim Fails as a Matter of Law

Defendants' curiously self-labeled "cause of action" for "Damages" fails because damages are a form of relief, not an independent cause of action. *See Zajaros v. Volvo Car Corp.*, 2025 WL 1762963, at *2 fn. 1 (M.D. Tenn. June 25, 2025) ("damages . . . are remedies, not causes of action," even where pleaded as separate "counts"). To the extent Defendants attempt to assert a standalone claim for damages, that claim fails as a matter of law and must be dismissed.

Moreover, the allegations set forth in this section do not establish any independent basis for relief. Instead, they merely restate Defendants' underlying theories – namely, alleged contractual breaches, misrepresentations, and purported interference with business operations – and seek various categories of compensatory recovery flowing from those theories. Because those underlying claims fail for the reasons set forth above, Defendants cannot recover damages based on them.

Defendants cannot avoid dismissal by recasting deficient substantive claims as a separate "damages" cause of action or by listing categories of alleged loss untethered to any viable claim. Accordingly, the "Damages" claim does not warrant serious consideration and can be swiftly dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs/Counter-Defendants, The Tox Franchising Group, LLC and The Tox IP, respectfully request that the Court dismiss Defendants'/Counter-Plaintiffs' Counterclaim in its entirety with prejudice, as Defendants/Counter-Plaintiffs have failed to state any claim upon which relief can be granted, and grant such other and further relief as the Court deems just and proper.

Dated: April 28, 2026.                    Respectfully submitted,

*/s/Roland W. Baggott III*
Roland W. Baggott III (No. 023428)
BAGGOTT LAW, PLLC
4525 Harding Road, Suite 105
Nashville, Tennessee 37205
(615) 620-4580
(615) 620-4581 (fax)
roland@baggottlaw.com

Evan M. Goldman

(Admitted *Pro Hac Vice*)
THE FRANCHISE FIRM, LLP
225 Wilmington West Chester Pike, Suite 200
Chadds Ford, Pennsylvania 19317
(215) 965-1553
evan@thefranchisefirm.com

*Attorneys for The Tox Franchising Group, LLP
and The Tox IP, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing Memorandum in Support of Motion to Dismiss Defendants' Counterclaims was filed and served via the Court's CM/ECF filing system on:

G. Kline Preston IV
Kline Preston Law Group
4515 Harding Pike, Suite 107
Nashville, TN 37205
(615) 649-8680
(866) 610-9565 fax
kpreston@klineprestonlaw.com

Stuart A. Burkhalter (BPR #29078)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 fax
sburkhalter@rjfirm.com

**Attorneys for the Defendants**.

Dated: April 28, 2026            */s/ Roland W. Baggott III*
                                          Roland W. Baggott III