# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

THE TOX FRANCHISING GROUP, LLC, )
and THE TOX IP, LLC, )
)
    Plaintiffs/Counter-Defendants, )
)
v. )    **No. 3:26-cv-00141**
)
TENNESSEE BODY SCULPTING CO., )
RACHEL BORYACHINSKIY, )
GERMAN BORYACHINSKIY, and )
JOHN DOE ENTITIES 1-2, )
)
    Defendants/Counter-Plaintiffs. )

## DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE IN OPPOSITION TO PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

Plaintiffs The Tox Franchising Group, LLC and The Tox IP, LLC's (together, "The Tox") Motion to Dismiss the Counterclaim appears designed to do one thing: waste time (and money) of everyone involved. That is, Counterclaim Plaintiffs Rachel and German Boryachinskiy and Tennessee Body Sculpting Co. (together, "Ms. Boryachinskiy") have properly alleged their causes of action—clearly and in sufficient detail. The Tox does not contend that it has not been put on notice of the claims asserted against it or the factual bases for those claims (because, based on any common-sense reading of the Counterclaim, it has).

Instead, The Tox has raised this peculiar motion in which it proclaims that Ms. Boryachinskiy's Counterclaim relies on "generalized" or "conclusory" allegations, but then it never explains why it thinks that and does not provide any specificity, detail, or cogent legal analysis as to what is insufficient (and why). The Tox largely just quotes boilerplate law on the pleading standard and then cites—misleadingly—to only the "Causes of Action" section of the Counterclaim, while ignoring the fifty-seven (57) factual paragraphs that appeared *before* the

"Causes of Action" section. This obviously makes no sense and, of course, does not comport with the federal pleading standard and Rules 8, 9, and 12. The Tox's Motion should be denied.

**STANDARD OF REVIEW**

As this Court is aware, "[a] motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true." *Johnson v. Johnny C. Gray & Ski Racing Inc.*, No. 2:10-CV-163, 2011 U.S. Dist. LEXIS 170246, at **15-16 (E.D. Tenn. Sep. 16, 2011) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). "The United States Court of Appeals for the Sixth Circuit has repeatedly construed the pleading standard under the Federal Rules as 'liberal.'" *Brittney Gobble Photography v. Wenn Ltd.*, No. 3:16-cv-306, 2016 U.S. Dist. LEXIS 201133, at **5-9 (E.D. Tenn. Nov. 15, 2016) (citing *Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004)). Indeed, the examples of a *non-conforming* pleading are described as those that are "unintelligible, disorganized, or conclusory." *Id.* (emphasis added).

Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Johnson v. Griffin*, No. 3:22-cv-00295, 2024 U.S. Dist. LEXIS 115479, at **4-6 (M.D. Tenn. July 1, 2024) (citing *Guzman v. United States Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012)). Ultimately, "'Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era.'" *Double Cola, Co. USA v. Ace Am. Ins. Co.*, No. 1:25-cv-77, 2025 U.S. Dist. LEXIS 175670, at *10 (E.D. Tenn. Sep. 9, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

<u>**ARGUMENT**</u>

**A.       Ms. Boryachinskiy has adequately alleged a breach-of-contract claim.**

As to the breach-of-contract claim, The Tox's argument boils down to this: Ms. Boryachinskiy did not include enough paragraph/section numbers from the contract when making her allegations. That is, The Tox argues that Ms. Boryachinskiy did not cite specific provisions from the contracts at issue and says that this means she has failed to properly plead breach of contract. (*See* Doc. No. 72, p. 11). This argument is wrong for two reasons—first, she did, in fact, include certain specific paragraph numbers and otherwise obvious paragraph references, so the argument is factually wrong; and, second, she is not actually required to plead the operative contract language "with such specificity," so the argument is legally wrong as well as it imagines a heightened pleading standard that does not exist.

First, Ms. Boryachinskiy does, indeed, specifically cite Section 20 of the Franchise Agreement (the "FA") and The Tox's failure to abide by its own dispute-resolution process (which is a breach of contract), while also specifically referencing that The Tox unlawfully terminated the Multi-Unit Development Agreement (the "MUDA") and sent pretextual non-compliance notices in order to terminate the FA—both of which also constitute breaches of contract. (*See* Doc. No. 48, Countercl., ¶¶ 33-34, 38, 40, 96 (breach of Section 20); 35-36, 40, 43, 47, 96 (breach of the MUDA); 44 (breach of the FA by way of pretextual non-compliance notices)). So, she specifically identifies the contracts and provisions related thereto at issue, and any contention otherwise is simply wrong.

Second, Ms. Boryachinskiy's breach-of-contract claim is not, in fact, dependent on how many contractual paragraph/section numbers she references in her Counterclaim. Indeed, the very case that The Tox references, (Doc. No. 72, p. 10), for a purported requirement to cite to the

"specific contractual obligation at issue" holds the opposite and, instead, states that a plaintiff merely had to reference a contractual section and "is not required to plead the operative language with such specificity." *Archambeault v. Wyndham Vacation Ownership*, No. 3:20-cv-01044, 2021 U.S. Dist. LEXIS 250833, at **16-18 (M.D. Tenn. July 14, 2021). That is, a plaintiff is not required to articulate what language in the contract provision was violated, but, instead, at the Rule 12 stage, the *Archambeault* court conducted a very different analysis: "The [First Amended Complaint] is not unintelligible, and, although it is not long on detail, it pleads sufficient facts to state a plausible claim for breach of contract." *Id.* Likewise, Tennessee courts regularly reject the notion that a heightened pleading standard applies to breach-of-contract claims. *See Nashville Acupuncture Clinic, PLLC v. Holistic Billing Servs., LLC*, No. 3:23-cv-00572, 2023 U.S. Dist. LEXIS 227520, at *10 (M.D. Tenn. Dec. 21, 2023).

Further, it does not take Sherlock Holmes to determine what contract provisions are at issue as the FA itself has an entire section titled: "FRANCHISOR'S OBLIGATIONS." (Doc. 1.1, § 10). And, within that section, there is a specific "Construction" obligation which details the approvals that The Tox must provide to franchisees during the construction process for that franchisee to be able to progress through the studio-opening process. (*Id.*, § 10.2). This provision matches up directly with allegations of breach of contract found at Paragraphs 18-22 of the Counterclaim in which Ms. Boryachinskiy alleges that The Tox's failure to provide such approvals materially impacted her ability to get her studio up and running. (Doc. No. 48, ¶¶ 18-22). Relatedly, Paragraphs 23-27 detail The Tox's breaches as to marketing and advertising, and, again, an entire section exists within the FA on "ADVERTISING, PROMOTIONS AND RELATED FEES," (Doc. 1.1, § 13), which again matches up directly with allegations of The Tox's breaches in providing marketing and advertising support. (Doc. No. 48, ¶¶ 23-30).

In short, The Tox largely feigns ignorance here in an effort to force Ms. Boryachinskiy to spin her wheels explaining what should be plain in her Counterclaim for anyone engaging with the pleading in good faith. Ms. Boryachinskiy has adequately alleged a claim for breach-of-contract.

**B.      Ms. Boryachinskiy has adequately stated a claim for fraud.**

The Tox's curious tactics in its Motion are, perhaps, best exemplified in its argument that Ms. Boryachinskiy's fraud allegations are deficient. That is, The Tox throws all sorts of different legal concepts related to the pleading of fraud at the wall: It says the allegations do not include the "who, what, when, where, and how," (Doc. No. 72, p. 7); that the allegations are "vague" and refer to unspecified "promises," (*id.*); that the fraudulent statements at issue are statements of opinion, (*id.*, p. 8); and that Ms. Boryachinskiy cannot establish reliance. (*Id.*, p. 9). But, then, The Tox never actually engages with the allegations in the Counterclaim that have been made or explain the application of this law to the facts as alleged here. That is, the Counterclaim states—at Paragraph 11—that The Tox "made the following false representations prior to the execution of the [FA] and [MUDA]…." and then lists six subparagraphs. (Doc. No. 48, ¶¶ 11(a.-f.)). The Tox, however, does not acknowledge this paragraph and these subparagraphs.

If it had, it would have found that Ms. Boryachinskiy specifically alleged that The Tox misstated The Tox studio revenue for a franchisee; misstated that 80% of this revenue was generated by social media influencers; and misstated that, when Ms. Boryachinskiy became a franchisee, The Tox would send twelve (12) social media influencers to her studio per month. (*Id.*). Ms. Boryachinskiy then went on to allege that these statements were made at The Tox's August 2024 Confirmation Day in presentations provided to Ms. Boryachinskiy. (*Id.*).

Although Rule 9(b) requires parties to "state with particularity the circumstances constituting fraud or mistake," "[t]he adequacy of 9(b) pleadings in the face of a motion to dismiss

5

Case 3:26-cv-00141      Document 73      Filed 05/08/26      Page 5 of 15 PageID #: 922

under 12(b)(6) are analyzed under the *Twombly/Iqbal* framework, which requires a plaintiff to "state a claim to relief that is plausible on its face," by "pleading factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Smith v. GM LLC*, 988 F.3d 873, 883 (6th Cir. 2021). Here, the who (The Tox), when/where (August 2024 Confirmation Day), what (misstated revenue of The Tox studios and misstated how revenue is generated in connection with social media influencer marketing), and how (the statements are false because they "did not disclose accurate revenue from all franchisees") have been adequately and clearly stated in the Counterclaim. The Court's analysis can, in fact, stop there,[1] as Ms. Boryachinskiy has stated a claim for fraud and nowhere does The Tox attempt to explain, with any level of specificity, why these particular allegations are insufficient under the law. In short, a party cannot simply loft up a legal concept and then not actually apply the legal concept to the pleading at issue and hope to be successful on a Rule 12(b)(6) motion.

As to Ms. Boryachinskiy's alleged failure to plead reasonable reliance due to the existence of a merger or integration clause, The Tox cites just one opinion in support of this argument—a summary judgment ruling applying Michigan law.[2] (*See* Doc. No. 72, p. 10). Obviously, a

---

[1] Ms. Boryachinskiy, however, includes a number of other allegations, including that The Tox stated that it would handle all marketing for the business and would manage the website and provide adequate software for marketing but did not do so. (*See, e.g.*, Doc. No. 48, ¶¶ 11(c., e.)). Drawing reasonable inferences in Ms. Boryachinskiy's favor, these statements were likewise made at the August 2024 Confirmation Day to induce Ms. Boryachinskiy to sign the FA and MUDA.

[2] The FA does, indeed, purport to require the application of Florida law. (Doc. No. 1.1, § 20.3). Contractual choice-of-law provisions are, however, waivable in litigation. *Smith v. GM LLC*, 988 F.3d 873, 879 n.5 (6th Cir. 2021). The Tox has very clearly waived this contractual choice-of-law provision by arguing that Tennessee law should apply to this dispute. (*See* Doc. No. 72, pp. 19-20). Ms. Boryachinskiy agrees. Here, however, The Tox cites Michigan law, which, of course, has nothing to do with this action.

summary judgment argument is not relevant for purposes of this Rule 12(b)(6) motion, so this argument can be rejected for that reason alone.

In addition, though, under Tennessee law, contractual disclaimers of reliance and similar provisions do not alone suffice to prevent a plaintiff from establishing justifiable reliance. "Tennessee law 'gives no effect to disclaimers in the presence of fraud.'" *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 928 (Tenn. 1991) (quoting *Agristor Leasing v. A.O. Smith Harvestore Prods., Inc.*, 869 F.2d 264, 268 (6th Cir. 1989)). After all, fraud in the inducement can rescind a contract. Hence, the FA's terms do not ipso facto bar fraud claims. *See, e.g.*, *Noblitt v. Bluegreen Vacations Unlimited, Inc.*, 2019 WL 7290474, at *7 (E.D. Tenn. Mar. 20, 2019); *Am.'s Collectibles Network, Inc. v. Sterling Com. (Am.), Inc.*, 2016 WL 9132294, at *17 (E.D. Tenn. Sept. 7, 2016).

Rather, "[r]easonable reliance is a question of fact." *Fulmer v. Follis*, 2018 WL 6721248, at *5 (Tenn. Ct. App. Dec. 20, 2018). To answer that question, courts applying Tennessee law consider numerous factors that typically require development of a factual record. *Id.* (factors set out in margin[3]); *see Sugarlips Bakery, LLC v. A&G Franchising, LLC*, 2022 WL 210135, at *9 (M.D. Tenn. Jan. 24, 2022) (justifiable reliance "must be based on a number of contextual factors, not merely the content of the [disclaimer] statement itself"). Courts thus "cannot determine at the motion to dismiss stage whether Plaintiff's reliance was unreasonable." *Kolstad v. Leehar Distribs., LLC*, 2018 WL 6832086, at *5 (M.D. Tenn. Dec. 28, 2018).

---

[3] "(1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation."

In considering justifiable reliance as a question of fact, disclaimers and similar provisions "may certainly be strong *evidence* that Plaintiff's reliance was unreasonable." *Id.* (emphasis added). The evidence may be strong enough that a court could find reliance unjustifiable as a matter of law at the summary judgment stage. In every Tennessee case fitting that description, though, the contractual language directly contradicted the alleged misrepresentation. For example, when the contract expressly *granted a security interest*, the plaintiff could not justifiably rely on a representation that there *was no security interest*. *King v. Bradley*, 2022 WL 678568, at \*7 (Tenn. Ct. App. Mar. 8, 2022).[4] Here, The Tox does not detail in any way what alleged false statements were directly contradicted by the language of the FA, as The Tox provides no specificity to their argument whatsoever, so Ms. Boryachinskiy is, respectfully, unable to respond to it. Instead, The Tox just vaguely states that a merger clause automatically destroys reasonable reliance, but that is, as noted above, not the law. The Tox's argument fails.

**C.  Ms. Boryachinskiy has adequately stated a claim for breach of the duty of good faith and fair dealing.**

As to the breach of the duty of good faith and fair dealing, The Tox's argument also misses the mark. Tennessee recognizes the duty of good faith and fair dealing in every contract. To be clear, in *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, the Tennessee Supreme Court re-affirmed the long-standing principle in Tennessee that the duty of good faith and fair dealing applies to the performance of every contract. 395 S.W.3d 653, 660 (Tenn. 2013). In that decision, the Court rejected defendants' argument that imposing a duty of good faith and fair dealing would

---

[4] *See also Cirzoveto v. AIG Annuity Ins. Co.*, 625 F. Supp. 2d 623, 629 (W.D. Tenn. 2009) (granting summary judgment; no justifiable reliance on statement that certain insurance rate would be permanent where contract limited rate to one year); *Burton v. Hardwood Pallets, Inc.*, 2004 WL 572350, at \*2 (Tenn. Ct. App. Mar. 22, 2004) (affirming summary judgment; no justifiable reliance on statement that there would be a personal guaranty when contract contained none).

"add a new provision to the contract which the parties were free to add themselves," *id*. at 666, and, instead, emphasized that "the implied covenant of good faith and fair dealing 'does not create new contractual rights or obligations, [but] protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement.'" *Id*. (quoting *Long v. McAllister–Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006)).

The Court ultimately determined that a provision that gave one party discretion to approve the assignment of a contract (but was silent as to the criterion that governed) required such discretion be exercised in good faith. *Id*. at 669. The Court further noted that the parties "could have inserted" a different standard within their contract—a standard that, for example, "consent may be withheld in the decider's sole discretion, for any or no reason, however arbitrary or unreasonable"—and such a bargained-for provision would theoretically have been enforceable. *Id.* at 667. Likewise, the Court noted that the parties could have "explicitly state[d] their intention" to avoid the duty of good faith and fair dealing but did not do so.[5] *Id.* at 669.

The situation here involves just such a discretionary decision: Paragraph 17.2 of the FA explicitly states that Franchisor "at its option" may "terminate" the FA if franchisee defaults under any other agreement with The Tox, including, as relevant here, the MUDA. (Doc. No.1.1, at §§ 17.2, 17.2.19). That is, even if Ms. Boryachinskiy defaulted under the MUDA (and she continues to maintain that she did not do so), The Tox must exercise its discretion/its "option" as to whether to terminate the FA for Ms. Boryachinskiy's functional The Tox studio in Nashville <u>in good faith</u>

---

[5] To date, Tennessee courts have not determined whether a party can actually contract out of the duty of good faith and fair dealing. Other courts have said no: "[T]he ability of a contracting party to expressly disavow the implied covenant of good faith and fair dealing…appears to be wholly theoretical;" instead, the covenant is "imposed on every contracting party, regardless of [the parties'] true intent." *Spadoni v. United Airlines, Inc.*, 47 N.E.3d 1152, 1159 (Ill. Ct. App. 2015).

and fairly. Ms. Boryachinskiy expressly alleged that The Tox termed her Nashville FA for retaliatory reasons and in bad faith. (Doc. No. ¶¶ 38-40, 43-44). So, this is exactly the situation envisioned by the Tennessee Supreme Court as to when there could be a breach of the duty of good faith and fair dealing, and Ms. Boryachinskiy has adequately stated a claim related thereto.

**D.      Ms. Boryachinskiy has properly pled a claim for unjust enrichment in the alternative.**

As noted above, Ms. Boryachinskiy has adequately alleged that the contracts at issue were induced by fraud. This claim is, obviously, in the alternative to her claims for breach of contract and breach of the duty of good faith and fair dealing, because "[i]t is well settled in Tennessee that the courts of our State will not be utilized to enforce a contract which is the product of fraud; indeed, fraud vitiates all that it touches." *Shelby Electric Co., Inc. v. Forbes*, 205 S.W.3d 448, 455 (Tenn. Ct. App. 2005). Unjust enrichment is likewise in the alternative to her claims for breach of contract, as Fed. R. Civ. P. 8(d) explicitly contemplates pleading in the alternative. This Court has somewhat recently analyzed this exact situation:

> The Court has previously noted that unjust enrichment can be brought as an alternative claim, such as when a plaintiff also alleges that the contract underlying its breach of contract claim is void or unenforceable…. That is to say, a plaintiff can alternatively plead a claim for breach of contract and for unjust enrichment; the plaintiff can allege that there was a valid contract that was breached and, alternatively assuming that there was no contract (or at least no *enforceable* contract), that there was unjust enrichment.

"
*PSC Indus. v. Johnson*, No. 3:19-cv-00362, 2021 U.S. Dist. LEXIS 81350, at *50 n.36 (M.D. Tenn. Apr. 28, 2021) (internal citations omitted). That is exactly what has been alleged here: a contract induced by fraud. So, if Ms. Boryachinskiy proves that claim, there is no enforceable contract and an unjust enrichment claim is viable.

The Tox also cites certain cases to argue that Ms. Boryachinskiy must exhaust all remedies before pursuing a claim for unjust enrichment, (Doc. No. 72, p. 15), but all of such cases dealt with situations in which there was a different contracting party, such as a sub-contractor needing to

exhaust remedies with a general contractor before pursuing any actions against a homeowner, *see, e.g., Heathcott & Assocs., LLC v. Russell*, No. 3:23-cv-01261, 2024 U.S. Dist. LEXIS 193486, at *7 (M.D. Tenn. Oct. 24, 2024) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)) ("Also, we think that before recovery can be had against the landowner on an unjust enrichment theory, the furnisher of the materials and labor must have exhausted his remedies against the person with whom he had contracted, and still has not received the reasonable value of his services.")—not the situation at issue here. Indeed, it is unclear how such exhaustion of remedies would work in this circumstance in which Ms. Boryachinskiy's claims are only against The Tox. That is, The Tox's argument is essentially that Ms. Boryachinskiy must exhaust all remedies against The Tox before it can pursue The Tox, which makes no sense. So, for these reasons as well, Ms. Boryachinskiy has stated a claim for unjust enrichment.

**E.**     **Ms. Boryachinskiy has properly alleged a claim for violation of the Tennessee Consumer Protection Act.**

In addition to her causes of action for common-law fraud, Ms. Boryachinskiy asserts violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.* ("TCPA"). "The scope of the TCPA is much broader than that of common-law fraud." *Borla Performance Indus., Inc. v. Universal Tool & Eng'g, Inc.*, 2015 Tenn. App. LEXIS 370, at *38 (Tenn. Ct. App. May 26, 2015) (quoting *Tucker v. Sierra Builders*, 180 S.W.3d at 115); *see also SecurAmerica Bus. Credit v. Southland Transp. Co.*, 2016 WL 1292087, at *4 (Tenn. Ct. App. Apr. 1, 2016) ("The TCPA was enacted to provide statutory remedies *beyond* common-law fraud actions.") (emphasis added). "Under the TCPA, a consumer can obtain recovery without having to meet the burden of proof that is required in common-law fraud cases, and the numerous defenses that are available to the defendant in a common-law fraud case are simply not available to the defendant in a TCPA case." *Id.* In short, it is easier to prevail on a TCPA claim than it is to prevail

on a common-law fraud claim. In part, that is because "the TCPA applies to any act or practice that is unfair or deceptive to consumers" not just intentional misrepresentations. *Borla*, 2015 Tenn. App. LEXIS 370, at \*38-39. Such "unfair or deceptive" acts include the following:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have; . . .
> (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . .
> (9) Advertising goods or services with intent not to sell them as advertised; . . .
> (12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law.

*Id.* at § 47-18-104.

"[W]hether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) (citations omitted). "A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Id*. An act or practice is unfair where "'the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" *Id*. at 116-17 (quoting 15 U.S.C.A. § 45(n)). "Any person who suffers an ascertainable loss of money or property as a result of an unfair or deceptive act or practice" under the TCPA may "bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1).

In addition, the Tennessee legislature has instructed that courts interpret and construe the TCPA "consistently with the interpretations given by the federal trade commission ("FTC") and the federal courts pursuant to § 5(a)(1) of the Federal Trade Commission Act ("FTCA"), codified in 15 U.S.C. § 45(a)(1)." *State ex rel. Slatery v. HRC Med. Ctrs., Inc.*, 603 S.W.3d 1, 23 (Tenn.

Ct. App. 2019) (quoting Tenn. Code Ann. § 47-18-115) (citation modified); *see also Wickham v. Sovereign Homes, LLC,* 2012 Tenn. App. LEXIS 669, at *16 (Tenn. Ct. App. Sep. 25, 2012) ("[T]he TCPA mirrors the prohibitions found in the Federal Trade Commission Act against unfair or deceptive practices in or affecting commerce.").

In addressing franchisor representations, The FTC Act defines "unfair or deceptive act or practice" to include, *inter alia*, the following:

> **(a)** Make any claim or representation, orally, visually, or in writing, that contradicts the information required to be disclosed by this part.
> …
> **(c)** Disseminate any financial performance representations to prospective franchisees unless the franchisor has a reasonable basis and written substantiation for the representation at the time the representation is made, and the representation is included in Item 19 (§ 436.5(s)) of the franchisor's disclosure document. . . .

16 C.F.R. § 436.9. As to Item 19 specifically, the FTC provides:

> If the franchisor makes any financial performance representation to prospective franchisees, the franchisor must have a reasonable basis and written substantiation for the representation at the time the representation is made and must state the representation in the Item 19 disclosure.

16 C.F.R. § 436.5(s)(3). As noted above, Ms. Boryachinskiy has made specific allegations related to The Tox's false statements related to franchisee financial performance, as well as how that financial performance is generated (80% from social media influencers). (Doc. No. 48, ¶ 11(a.)). Likewise, Ms. Boryachinskiy has made a number of allegations related to The Tox's advertising of services with an intent not to sell them as advertised and that The Tox's services to be provided to Ms. Boryachinskiy as a franchisee would be of a particular quality when The Tox knew they would not be. (*Id.*, ¶ 11(b.-f.)). As noted, the TCPA has a broader scope than common-law fraud, and Ms. Boryachinskiy's allegations certainly state a claim here.

**F.     To the extent The Tox has waived application of Florida law, then the claims pursuant to Florida statute are not viable.**

As noted above, The Tox appears to have explicitly waived the choice-of-law provision found in the FA. (*See* Doc. No. 72, pp. 19-20). To the extent that is the case, then the Florida statutory claims are not viable in this action. To the extent that is not the case, for the same reasons that Ms. Boryachinskiy has properly alleged claims for common-law fraud and violation of the TCPA, she has also alleged claims pursuant to the Florida Deceptive and Unfair Trade Practices Act and the Florida Franchise Act. In addition, Ms. Boryachinskiy's declaratory judgment and wrongful termination claims do appear to be encompassed by the breach-of-contract claim. To the extent the Court finds that breach of contract has been properly pled, then these two claims are duplicative.

<u>CONCLUSION</u>

For the reasons stated above, Ms. Boryachinskiy respectfully requests that the Court deny The Tox's ill-considered Rule 12(b)(6) motion and allow this case to proceed.

Respectfully submitted,

/s/ *Stuart A. Burkhalter*
Stuart A. Burkhalter (BPR #29078)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
Telephone: (615) 320-3700
Facsimile: (615) 320-3737
sburkhalter@rjfirm.com

/s/ *G. Kline Preston, IV*
G. Kline Preston, IV (No. 017141)
KLINE PRESTON LAW GROUP
Belle Meade Office Park
4515 Harding Pike, Suite 107
Nashville, Tennessee 37205
(615) 649-8680
(866)-610-9565 (fax)
kpreston@klineprestonlaw.com
*Attorneys for Defendants Tennessee Body Sculpting Co., Rachel Boryachinskiy, and German Boryachinskiy*

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made upon all counsel of record via the Court's ECF filing system on this the 8th day of May 2026:

/s/ *Stuart A. Burkhalter*